**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FREDERICK BANKS,** | : | **CIVIL ACTION NO. 1:21-CV-988** |
| | : | |
| **Petitioner** | : | **(Judge Conner)** |
| | : | |
| v. | : | |
| | : | |
| **WARDEN H. QUAY,** | : | |
| | : | |
| **Respondent** | : | |

**<u>MEMORANDUM</u>**

Presently before the court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. 1) filed by petitioner Frederick Banks ("Banks"), an inmate in the custody of the Federal Bureau of Prisons ("BOP"). For the reasons set forth below, the court will dismiss the petition.

**I.      <u>Factual Background & Procedural History</u>**

On June 12, 2020, Banks was sentenced in the United States District Court for the Western District of Pennsylvania to an aggregate 104-month term of imprisonment for wire fraud and aggravated identity theft. (Doc. 10-1 at 4-5, Public Information Inmate Data). His projected release date is February 4, 2023, *via* good conduct time. (<u>Id.</u> at 3, 6).

In the instant habeas petition, Banks alleges that his case manager recommended 151 to 180 days in a Residential Reentry Center ("RRC"), but this was based on "inaccurate & incomplete information." (Doc. 1 at 1). Specifically, he

contends that his PATTERN[1] score incorrectly reflects that he did not complete the

Non-Residential Drug Abuse Program ("NRDAP") or the Residential Drug Abuse

Program ("RDAP"), his custody classification score was incorrectly listed as high,

instead of minimum, and a threat notification was unlawfully placed in his central

file. (Id. at 1-2). Banks contends he is entitled to twelve months of RRC placement

pursuant to 42 U.S.C. § 17541, now codified at 34 U.S.C. § 60541. (Id.) For relief,

Banks seeks release from custody and placement in a RRC for the maximum of

twelve months, and removal of the notification in his central file. (Id. at 2-3). In

addition, Banks requests appointment of counsel. (Id. at 3).

Respondent argues that the petition must be dismissed for the following

reasons: (1) Banks failed to exhaust his administrative remedies; (2) the habeas

petition is successive in part and is subject to the abuse of writ doctrine; (3) Banks is

not entitled to twelve months of RRC placement under the Second Chance Act or 34

U.S.C. § 60541(A)(2); (4) RRC placement determinations are excluded from judicial

review pursuant to 18 U.S.C. § 3621; and (5) Banks has not shown that the BOP

exceeded its legal authority, acted unconstitutionally, or failed to follow statutory or

regulatory authority. (Doc. 10). The petition is ripe for resolution.

## II.   Discussion

### A.   Exhaustion of Administrative Review

Respondent argues that Banks failed to exhaust his administrative remedies

with respect to his RRC determination. (Doc. 10 at 5-7). Despite the absence of a

---

[1] The Prisoner Assessment Tool Targeting Estimated Risk and Needs.

statutory exhaustion requirement, courts have consistently required a petitioner to exhaust administrative remedies prior to bringing a habeas claim under § 2241. Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996). In the typical case, the failure to exhaust all stages of the administrative remedy system prior to the filing of a habeas petition under 28 U.S.C. § 2241 is a proper basis for dismissal. Moscato, 98 F.3d at 761-62. Exhaustion is required "for three reasons: (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." Moscato, 98 F.3d at 761-62 (citing Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981) (per curiam)).

Notably, exhaustion of administrative remedies is not required where exhaustion would not promote these goals. See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, No. 00-2958, 2000 WL 1022959, at *2 (E.D. Pa. July 10, 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

The BOP has established a multi-tier administrative remedy system whereby a federal prisoner may seek formal review of any aspect of his imprisonment. 28

C.F.R. §§ 542.10-542.19.  If an issue raised by the inmate cannot be resolved through the administrative remedy system, the BOP will refer the inmate to appropriate statutorily mandated procedures.  28 C.F.R. § 542.10(c).  The system first requires an inmate to present their complaint to staff before filing a request for administrative relief, which staff shall attempt to informally resolve.  28 C.F.R. § 542.13(a).  If informal resolution is unsuccessful, an inmate may file a formal written complaint to the Warden, on the appropriate form, within twenty calendar days of the date of the event or occurrence and the Warden shall provide a response within twenty calendar days.  28 C.F.R. §§ 542.14, 542.18.  If the inmate is dissatisfied with the Warden's response, he may file an appeal to the Regional Director within twenty calendar days.  28 C.F.R. § 542.15(a).  The Regional Director has thirty calendar days to respond.  28 C.F.R. § 542.18.  Finally, if the inmate is dissatisfied with the Regional Director's response, that decision may be appealed to the BOP's General Counsel at Central Office within thirty calendar days from the date of the Regional Director's response.  28 C.F.R. § 542.15(a).  No administrative remedy appeal is considered fully exhausted until reviewed by the BOP's Central Office.  28 C.F.R. § 542.15(a).

The BOP maintains a database known as the SENTRY Inmate Management System ("SENTRY").  (Doc. 10-1 at 1 ¶ 1, Declaration of Jonathan Kerr, BOP Attorney).  In the ordinary course of business, computerized indexes of all formal administrative remedies filed by inmates are maintained by the Institution, Regional, and Central Offices.  SENTRY generates a report titled "Administrative Remedy Generalized Retrieval" which allows codes to be entered to identify the

reason or reasons for rejecting a request for administrative relief.  (Doc. 10-1 at 1 ¶ 5; Doc. 10-1 at 18-31, Administrative Remedy Generalized Retrieval).

Banks' Administrative Remedy Generalized Retrieval report indicates that he never filed an administrative remedy related to his RRC placement recommendation.  (Doc. 10-1 at 18-31).  The Administrative Remedy Generalized Retrieval reveals that from July 12, 2020 through July 12, 2021, Banks filed twenty-six administrative remedies.  (Id.)  Since Banks arrived at LSCI-Allenwood on March 31, 2021, he filed twelve administrative remedies at the Institution, Regional, and Central Offices levels.  (Id. at 26-31).  Nothing in the record before the court establishes that Banks even attempted to pursue an administrative remedy with respect to his RRC placement recommendation.  Indeed, Banks admits that he did not file an administrative remedy with respect to his present claims.  (Doc. 1 at 2-3; Doc. 11 at 2).  He asserts that BOP staff failed to provide him with the appropriate forms, and he was "held. . . in the SHU without recourse."  (Doc. 1 at 2-3).  The court finds that Banks has adequately alleged that BOP staff may have improperly obstructed his administrative remedy process.  The court declines to dismiss the instant petition for failure to exhaust administrative remedies.

### B.    Abuse of Writ Doctrine

When a prisoner files multiple petitions for habeas corpus relief, the abuse of the writ doctrine, as set forth in 28 U.S.C. § 2244(a), may bar his claims, and states as follows:

> No circuit or district judge shall be required to entertain an application
> for a writ of habeas corpus to inquire into the detention of a person
> pursuant to a judgment of a court of the United States if it appears that

the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus, except as provided in section 2255.

28 U.S.C. § 2244(a).

The abuse of writ doctrine precludes inmates from relitigating the same issues in subsequent petitions or from raising new issues that could have been raised in an earlier petition.  See McCleskey v. Zant, 499 U.S. 467, 489 (1991) ("Our recent decisions confirm that a petitioner can abuse the writ by raising a claim in a subsequent petition that he could have raised in his first, regardless of whether the failure to raise it earlier stemmed from a deliberate choice.").  The government bears the burden of pleading abuse of the writ.  See id. at 494-95; Zayas v. I.N.S., 311 F.3d 247, 254 (3d Cir. 2002).  In the instant matter, the government has met its burden of proof.

Banks previously filed four habeas petitions challenging similar issues raised in the instant action.  See Banks v. Thompson, No. 1:21-CV-00761 (M.D. Pa.), Doc. 1 (requesting, *inter alia*, release from custody to a RRC for the maximum of twelve months); Banks v. Thompson, No. 1:21-CV-777 (M.D. Pa.), Doc. 1 (requesting, *inter alia*, transfer to home confinement pursuant to the Coronavirus Aid, Relief, and Economic Security ("CARES") Act); Banks v. M. Thompson, No. 1:21-CV-807, (M.D. Pa.) (challenging his sentence computation and seeking release from custody), Doc. 1; Banks v. R. Thompson, No. 1:21-CV-890 (M.D. Pa.), Doc. 1 (alleging, *inter alia*, that a threat notification was improperly placed in his SENTRY file and seeking release from custody).  Thus, the instant petition is subject to dismissal, at least in part, as an abuse of the writ.

In addition, as set forth below, the court finds that Banks' present § 2241 habeas petition must be dismissed because he is not entitled to twelve months of RRC placement, and BOP decisions concerning RRC placement are not subject to judicial review absent an abuse of discretion.

### C.     Banks is not Entitled to Twelve Months of RRC Placement Under the Second Chance Act or 34 U.S.C. § 60541(A)(2)

The Supreme Court has consistently held that a prisoner has no constitutional right to be confined in a particular place. See McKune v. Lile, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); Sandin v. Conner, 515 U.S. 472, 478 (1995) ("[T]he Due Process Clause did not itself create a liberty interest in prisoners to be free from intrastate prison transfers."); Meachum v. Fano, 427 U.S. 215, 224 (1976) ("The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in *any* of its prisons."). The Attorney General—and by delegation the BOP—has exclusive authority and discretion to designate the place of an inmate's confinement. See Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 251 (3d Cir. 2005). See also United States v. Delacruz, 2020 WL 3405723, *4 (M.D. Pa. June 19, 2020) ("[T]he Court is without authority to control the BOP's placement of Defendant—the Court can neither directly assign Defendant to home confinement nor direct the BOP to do so.").

On April 9, 2008, the Second Chance Act of 2007, Pub.L. No. 110-199, Title II, § 251, 122 Stat. 657, 697, codified at 18 U.S.C. §§ 3621, 3624, went into effect. The Second Chance Act provides:

7

(c) Prerelease custody. —

(1) In general. —The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

(2) Home confinement authority. —The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months. The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph.

18 U.S.C. § 3624(c). The Act requires the BOP "to make an individual determination that ensures that the placement is 'of sufficient duration to provide the greatest likelihood of successful reintegration into the community.'" Wilson v. Strada, 474 F. App'x 46, 46-47 (3d Cir. 2012) (nonprecedential) (quoting 18 U.S.C. § 3624(c)(6)(C)). In doing so, the BOP must consider: "(1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence [ ] recommending a type of penal or correctional facility as appropriate; and (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28." 18 U.S.C. § 3621(b); see also Vasquez v. Strada, 684 F.3d 431, 433 (3d Cir. 2012).

Likewise, the First Step Act does not mandate that the BOP place prisoners in a halfway house for six months or any other period. Under 18 U.S.C. § 3624(c), as amended by the Second Chance Act of 2007, the BOP is authorized to consider placing an inmate in a community correctional facility for up to twelve months.

However, a prisoner is neither entitled nor guaranteed such placement for any minimum amount of time.  18 U.S.C. § 3624(c).  See Woodall, 432 F.3d at 240; Schmutzler v. Quintana, No. 5:19-CV-46, 2019 WL 727794, at *2 (E.D. Ky. Feb. 20, 2019) (collecting cases).  Such placement decisions are solely within the discretion of the BOP.  The First Step Act did not alter this rule.

Thus, when considering an individual's eligibility for pre-release placement in a RRC, the BOP is required to ensure that decisions are made: (A) consistent with the five factors in 18 U.S.C. § 3621(b); (B) on an individualized basis; and (C) so that the duration of the placement period gives the inmate the greatest likelihood of successful community reintegration.  18 U.S.C. § 3624(c)(6).

The record in this case clearly establishes that Banks' team gave him individualized consideration consistent with the five factors of section 3621(b). They found the likelihood of bed space to be adequate, considered the nature of his offense (wire fraud and aggravated identity theft), noted his significant institutional disciplinary record, recognized that he participated in programming and institutional work, and noted that the Sentencing Commission has no policy concerning RRC placement.  (Doc. 10-1 at 13-16, Individualized Needs Plan, Initial Classification).

The BOP has the discretion to determine if, and when, to transfer Banks to RRC.  Consistent with 18 U.S.C. § 3621(b), the BOP individually considered Banks under the factors relevant to RRC placement.  His disagreement with the BOP's RRC placement recommendation does not establish a constitutional violation, as nothing in the Second Chance Act, First Step Act, or § 3621(b) entitles an inmate to

any guaranteed placement in an RRC.  See Woodall, 432 F.3d at 244-51 (holding in

exercising its discretion to make halfway house placement decisions, the Bureau

must consider the factors set forth in § 3621(b); "[h]owever, that the BOP may

assign a prisoner to a [halfway house] does not mean that it must."); Beckley v.

Miner, 125 F. App'x 385, 389 (3d Cir. 2005) (holding "[i]t is well settled, and the

parties agree, that the Bureau has nearly exclusive jurisdiction to classify and

transfer prisoners.").

Moreover, a petitioner complaining about a BOP assignment is not entitled to

judicial relief for an alleged "violation of his Fifth Amendment right to due process

because 'the failure to receive relief that is purely discretionary in nature does not

amount to a deprivation of a liberty interest'." Assaad v. Ashcroft, 378 F.3d 471, 475

(5th Cir. 2004) (quoting Mejia Rodriguez v. Reno, 178 F.3d 1139, 1146 (11th Cir. 1999)

(citing Conn. Bd. of Pardons v. Dumschat, 452 U.S. 458, 465 (1981))).  For these

reasons, the court will dismiss the habeas petition.

### D.    BOP Decisions Concerning RRC Placement are not Subject to Judicial Review Absent an Abuse of Discretion

Banks challenges the denial of his pre-release placement *via* 28 U.S.C. § 2241.

Section 2241 "confers habeas jurisdiction to hear the petition of a federal prisoner

who is challenging not the validity but the execution of his sentence." Coady v.

Vaughn, 251 F.3d 480, 485 (3d Cir. 2001).  A habeas corpus petition filed pursuant to

28 U.S.C. § 2241 is the appropriate means for a federal inmate to challenge a BOP

decision to limit or exclude their placement in an RRC.  See Woodall, 432 F.3d at

243-44.  Review of the RRC placement decision is limited to whether the BOP

abused its discretion.  Vasquez, 684 F.3d at 434 (citing Barden v. Keohane, 921 F.2d 476, 478 (3d Cir. 1991)).

Because the BOP's placement decisions, including determinations regarding halfway house and home confinement placement, are expressly insulated from judicial review, the court may only evaluate the BOP's decision to determine if it abused its discretion by not adhering to the requirements of the applicable statutes. See 18 U.S.C. § 3621(b) ("[A] designation of a place of imprisonment under this subsection is not reviewable by any court."); Marshall v. Lansing, 839 F.2d 933, 942-51 (3d Cir. 1988) (district court's authority to ensure that an agency adheres to the law does not permit it to displace the agency's decision-making process; the role of the court is limited to ensuring that the agency follows the law and its regulations). Thus, the court is in no position to make a judgment about the length of time necessary for the greatest likelihood of Banks' successful reintegration into the community.  This task falls squarely within the discretion of the BOP.

Because the court concludes that the BOP properly reviewed Banks' case on an individualized basis and followed the five factors set forth in 18 U.S.C. § 3621(b), Banks has failed to show that the BOP exceeded its legal authority, acted unconstitutionally, or failed to follow statutory or regulatory authority.

**III.**     **Conclusion**

We will dismiss the petition for writ of habeas corpus filed pursuant to 28

U.S.C. § 2241.  Because the court is dismissing the habeas petition, we do not reach

Banks' request for appointment of counsel.  An appropriate order shall issue.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:        November 17, 2021